IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TINA CLAWSON and PATRICIA NEIS,

    Plaintiffs,

vs.                                            No. CIV 99-379 MV/RLP

SOUTHWEST CARDIOLOGY ASSOCIATES, P.A.,
a corporation, and WILLIAM BENGE, M.D., an individual,

    Defendants.

# **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiffs' Motion to Remand to State Court and Supporting Brief, filed May 17, 1999 **[Doc. No. 17]**, Defendants' Motion to Amend Order, filed July 8, 1999 **[Doc. No. 24]**, Defendants' Motion to Dismiss, or in the Alternative, to Remand, filed September 28, 1999 **[Doc. No. 56]**, and Defendants' Motion to Vacate Default Judgment, filed May 6, 1999 **[Doc. No. 15]**. The Court, having considered the motions, responses, relevant law, and being otherwise fully informed, finds that the motions are not well-taken and will be **DENIED**.

## PROCEDURAL BACKGROUND

Plaintiffs, Tina Clawson and Partricia Neis, filed their complaint in the Second Judicial District Court. Counsel for Defendants Southwest Cardiology Associates, P.A. and William Benge, M.D. entered appearances for the record on April 2, 1999, and removed the case to this

Court the same day. On April 21, 1999, Plaintiffs sought and obtained Clerk's Entry of Default against Defendants for "failure to plead or otherwise defend" and moved for an Entry of Default Judgment. Defendants received notice of Entry of Default on April 22, 1999, and filed their answer and counterclaim on April 26, 1999. On April 27, 1999, this Court issued a Default Judgment Order against Defendants who immediately filed a Motion to Vacate and Set Aside the Judgment of Default. By Memorandum Opinion and Order filed June 23, 1999 **[Doc. No. 23]** (the "Order"), this Court denied the Motion to Vacate.

Defendants then moved for an amendment to the Court's Order certifying the denial of the default for interlocutory appeal **[Doc. No. 24]**. In that Motion, Defendants raise the Motion to Remand, citing Tenth Circuit case law requiring that the Court answer any question concerning its jurisdiction to hear the case prior to entering default. *See, e.g., Dennis Garberg & Associates, Inc., v. Pack-Tech International Corp.*, 115 F.3d 767, 771 (10th Cir. 1997)(when entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties")(citation omitted). As such, the Court hereby reverses the denial of the initial remand motion as moot and instead, denies the remand motions after considering their merits.

## FACTUAL BACKGROUND

Plaintiffs seek compensation for their alleged wrongful discharge by Defendants and for alleged negligent retention and supervision by Southwest Cardiology Associates. Count I of the Complaint alleges that Plaintiffs were fired for complaining to management about unacceptable nursing practices and harassment and that Plaintiff Neis was retaliated against and terminated because of her medical condition and anticipated disability or health benefit expenses. Counts II

and III allege that Defendant Southwest Cardiology Associates breached Plaintiffs express or implied employment contract and the covenant of good faith and fair dealing by firing them for improper reasons. Finally, Counts IV and V allege negligent retention and supervision of Defendant Benge by Defendant Southwest Cardiology Associates and prima facie tort.

Defendants' Notice of Removal alleges that Plaintiffs' claims are governed by the Employee Retirement Income & Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et. seq.* and that Plaintiffs are asserting claims within the scope of Title VII and the Americans with Disabilities Act. Defendants admit that Plaintiffs have yet to assert any Title VII claim and do not press their claim concerning the Americans with Disabilities Act, which appears nowhere on the face of the Complaint. Instead, Defendants focus on ERISA, arguing in their response to the remand motion as they did in their Notice of Removal that Plaintiffs' claims are completely preempted and therefore properly heard in federal court. Plaintiffs disagreed initially, moving for remand to the state court. In an unusual move, Defendants subsequently filed a motion to remand or dismiss. In that motion and the response, the parties take positions diametrically opposed to their previous briefs on the issue of whether remand is proper.

## ANALYSIS

### I. Remand Motions

In analyzing the remand motions, the Court begins with the general rule that "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). When removal is premised on federal question jurisdiction, the analysis focuses on the "'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on

the face of the plaintiff's properly pleaded complaint." *Id*. "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id*. "Thus, it is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id*. at 393.

The Supreme Court has however recognized a narrow exception to the "well pleaded complaint rule," that being the doctrine of "complete preemption." *Id*. As the Court explained,

> [o]n occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well- pleaded complaint rule. Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

*Id*. (citing *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65 (1987) and *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 24 (1983) (quotation marks omitted). To date, the Supreme Court has held that the "complete preemption" doctrine applies in two situations: (1) to claims arising under the National Labor Management Relations Act; and (2) to claims arising under section 502 of ERISA. *Metropolitan Life*, 481 U.S. at 65.

In *Metropolitan Life,* 481 U.S. 58, the Supreme Court held that state law claims which fall under the ERISA civil enforcement provisions of 29 U.S.C. § 1132(a)[1] are completely preempted.

---

[1] Section 502(a) of the Employee Retirement Income & Security Act of 1974 is codified at 29 U.S.C. § 1132(a).

*Id.* at 66. While the facts of the case involved a suit falling within § 1132(a)(1)(B), which provides that a plan beneficiary may bring suit in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," the Court held that complete preemption applies to any case falling within § 1132(a). As the Court explained, "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a), removable to federal court." *Id.* at 66. *See also Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (1990)("the preemptive effect of § 502(a) was so complete that an ERISA pre-emption defense provides a sufficient basis for removal of a cause of action to the federal forum notwithstanding the traditional limitation imposed by the 'well-pleaded complaint' rule"); *Romney v. Lin*, 94 F.3d 74, 78 (2d Cir. 1996)(state law cause of action is removable if the cause of action is based on a state law that is preempted by ERISA and is within the scope of § 502(a)); *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995)("§ 502(a) provides the basis for complete preemption"); *Felton v. Unisource Corp.*, 940 F.2d 503, 507 (9th Cir. 1991)(claims falling within either §502(a)(1)(B) or §502(a)(3) completed preempted by ERISA).

However, not all causes of action that are preempted by ERISA can be removed to federal court. The Supreme Court has distinguished between "complete preemption" under § 1132(a) and "conflict preemption" under § 1144(a).[2] The difference is important because complete preemption provides an exception to the well-pleaded complaint rule, and conflict preemption does not. State law claims that fall within the scope of § 1132(a) are complete preempted, which

---

[2] §1144 provides, in relevant part, that "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."

means that a plaintiff's state law claim is properly re-characterized as one arising under federal law. *Taylor*, 481 U.S. at 60, 64; *Rice,* 65 F.3d at 640. However, state law claims that are merely subject to "conflict preemption" under § 1144 are not re-characterized and cannot provide the basis for federal court jurisdiction. While the federal law provides a defense, the well-pleaded complaint rule governs and the state law claims do not provide federal jurisdiction.

Since this Court only has jurisdiction if Plaintiffs' claims are subject to complete preemption, the Court must evaluate whether Plaintiff Neis's claim that Defendants retaliated against and terminated her because of the "anticipated disability or health benefits expenses" (Complaint, ¶ 38), falls within the scope of § 1132(a). To begin this analysis, the Court starts with *Ingersoll-Rand*, 498 U.S. 133, in which the Court held that the plaintiff's claim that the defendant terminated him to avoid paying his pension benefits was subject to conflict preemption under § 1144(a). While the issue raised was not federal court jurisdiction, the Court's analysis sheds light on the case at hand.

After determining that the claim was preempted by §1144(a), the Court explained that Plaintiff's state law claim of wrongful termination to avoid paying pension benefits was preempted because it conflicts directly with ERISA §1140. *Id.* at 142. Section § 1140 provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

As the Supreme Court explained, "[b]y its terms [§1140] protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting." *Id.* at 143.

The Court went on to find that claims brought under §1140 were enforceable under §1132(a)(3), which provides that "[a] civil action may be brought (3) by a participant . . . (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan."

Plaintiff Neis claims that Defendants fired her to avoid paying anticipated health care and disability benefits. Since this claim is identical to the plaintiff's claim in *McClendon*, the Court's analysis that the claim falls within ERISA § 1140 and is enforceable pursuant to §1132(a)(3) leads to the conclusion that Plaintiff Neis's claim is completely preempted.

All but one of the appellate and district courts that have addressed ERISA preemption of state law claims of wrongful termination to avoid paying benefits have found that these claims are completely preempted where the payment of benefits issue was an element of the claim rather than an incidental result of the termination. *Rozzell v. Security Services, Inc.*, 38 F.3d 819 (5th Cir. 1994)(removal improper because claim for retaliatory discharge in which benefits are mentioned as element of damages is not completely preempted by ERISA); *Felton v. Unisource Corp.*, 940 F.2d 503, 507 (9th Cir. 1991)(claim that defendant discharged plaintiff to avoid paying medical insurance completely preempted); *Flowerette v. Heartland Heathcare Center*, 903 F. Supp. 1042, 1045 (N.D. Tex. 1995)(removal proper based on defendant's state claim that she was terminated to prevent her from recovering disability and employee benefits).

Neis's claim does not mention health and disability benefits merely as an element of damages. Rather, Neis claims that denial of anticipated medical benefits was one of the improper motivations behind her termination. Since this claim falls within the enforcement provisions of § 1132(a), it is completely preempted by ERISA and Defendants' removal was proper.

Plaintiffs in their remand motion and later, Defendants in theirs', urge the Court to follow

the one district court case that found that a state law claim of wrongful termination to avoid payment of health insurance benefits or retirement income benefits was not completely preempted. *Mallory v. Electronic Data Systems*, 1995 U.S. Dist. LEXIS 10386 (E.D. Mich. 1995). In *Mallory*, the Court found that only those claims that fall within §1132(a)(1)(B) are completely preempted. Because plaintiffs' state law claims were enforceable under §1132(a)(3), the Court reasoned that complete preemption did not apply. *Id.* at *6-7. The Court declines to follow this decision since its holding is directly contrary to the language from at least two Supreme Court cases cited above, stating that complete preemption applies to all claims falling within any of the provisions of § 1132(a). *Metropolitan Life,* 481 U.S. at 66; *Ingersoll-Rand*, 498 U.S. at 144.[3]

The Court also declines to follow the analysis in *Le v. Applied Biosystems*, 886 F. Supp 717 (N.D. Cal. 1995), in which the court held that because plaintiff's state law claim could have been brought as a claim under the Americans with Disabilities Act ("ADA"), it was not subject to complete ERISA preemption. In *Le*, the plaintiff alleged state law claims for wrongful termination to avoid payment of medical benefits. The Court relied on the Supreme Court's decision in *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96 (1983), in finding that claims like Mr. Le's, that alleged actions violating the ADA, were not preempted because of the exception to preemption whenever it would serve to "alter, amend, modify, invalidate, impair or supersede any

---

[3] While the *Mallory* Court relied on *Warner v. Ford Motor Company*, 46 F.3d 531 (6th Cir. 1995)(*en banc*), the *Warner* decision distinguishes complete preemption pursuant to §1132(a)(1)(B) and conflict preemption pursuant to § 1144. To the extent that the *Warner* decision could be read to limit complete preemption to claims falling within §1132(a)(1)(B), the Court finds that this decision is contrary to the Supreme Court's analysis in *Metropolitan Life* and *Ingersoll-Rand.* To the extent that this Court's decision in *Herrera v. Lovelace Health Systems, Inc.*, 35 F. Supp.2d 1327 (D. N.M. 1999) could be read to limit complete preemption to claims falling within § 1132(a)(1)(B), the Court expressly limits its analysis in that case to the facts alleged, in which the claims did not fall within any section of §1132(a).

law of the United States." 29 U.S.C. § 1144(d).

In *Shaw*, the Supreme Court found that a state anti-discrimination statute was not preempted to the extent that the statute played an important role in the Title VII enforcement scheme. The Court explained that, in light of the importance of state fair employment laws to Title VII's administrative enforcement scheme, preemption would frustrate Title VII's goals of deferral of charges to a state agency for initial processing and investigation and would lead to less effective enforcement of Title VII. *Id.* at 102, n.23. However, in light of the Supreme Court's admonition that any exceptions to the broad ERISA preemption created by Congress were to be construed narrowly, *id.* at 104, the Court interprets the holding in *Shaw* to apply only to instances that would affect the enforcement of federal law.[4] This would occur, for example, when a plaintiff had filed charges with a state agency to process a discrimination claim for which federal law requires deferral to the state agency's procedures. *See* 42 U.S.C. §2005-e, incorporated into the ADA at 42 U.S.C. §12117(a).

Neither the *Le* court nor the case it relied on, *Bennett v. Hallmark Cards, Inc.*, 1993 WL 327842 (W.D. Mo. 1993), considered the Supreme Court's admonition that the exemption to preemption be interpreted narrowly. Nor did either court address the fact that the result of their analysis undermines the goal of encouraging employers to offer employment benefits by ensuring a uniform enforcement and damages scheme for suits concerning these benefits. In the case at hand, where Plaintiffs have not resorted to state administrative procedures or state law to enforce

---

[4] The Supreme Court did not address the scope of the exception in *Shaw* because it found that this exception did not apply where state law prohibited a practice that was lawful under Title VII. The Court reasoned that no federal law could be impaired by pre-empting a state law prohibiting conduct that federal law permitted. 463 U.S. at 103-104.

their rights under the ADA, the Court finds that § 1144(d) does not save this case from complete preemption.

Plaintiffs' remand motion asks the Court to remand all claims other than Neis's retaliation claim in the event that this claim provides a basis for federal court jurisdiction. However, a district court may exercise pendent jurisdiction over state law claims arising from a nucleus of operative fact common to both the state law claims and the ERISA-preempted claim. *See, e.g., United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *Nishimoto v. Federman-Bachrach & Associates*, 903 F.2d 709, 714 (9th Cir. 1990). In this case, Plaintiffs allege multiple wrongful motives in their termination. While Clawson does not allege a claim based on anticipated medical benefits, she and Neis share claims that they were fired for their intolerance of a sexually hostile working environment and for their objections to inappropriate nursing practices. Since both Plaintiffs were fired at the same time, and both allege numerous wrongful reasons for their terminations, the Court finds that the ERISA-preempted claim and the state law claims arise out of a common nucleus of operative fact and should be heard together. Indeed, because Plaintiffs allege numerous wrongful motives for the same action (their termination), it would be misleading for different triers of fact to hear only part of their allegations.

Plaintiffs seek sanctions against Defendants in the amount of Plaintiffs' attorneys fees for preparing the response to Defendants' motion to dismiss or remand, asserting that Defendant unreasonably multiplied proceedings in the case in violation of 28 U.S.C. § 1927. Plaintiffs point to Defendants' actions in removing the case to federal court and then, several months later, arguing that there is no federal court subject matter jurisdiction, as grounds for sanctions. Defendants counter that they did not multiply the proceedings because if Plaintiffs had maintained

their previous position that there was no federal subject matter jurisdiction, they would not have opposed the motion to remand. Further, Defendants correctly aver that the issue of subject matter jurisdiction cannot be waived. Given that the Court had not yet squarely addressed the federal jurisdiction issue, Defendants' change in counsel, and the fact that both parties changed their position, the Court declines to impose sanctions against Defendants for their filing of the motion to remand or dismiss.

## II. Motion to Amend Order

Defendants have asked the Court to amend its Memorandum Opinion and Order of June 23, 1999 ("the Order") to certify it for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

The decision to allow an immediate appeal of a non-final order under 28 U.S.C. § 1292(b) is within the discretion of the district court. *See Swint v. Chambers County Com'n*, 514 U.S. 35, 46 (1995). Defendants must establish all three requirements of the statute for the district court to certify a question for interlocutory appeal: (1) the interlocutory order must involve a controlling question of law; (2) there must be substantial ground for difference of opinion as to the controlling question; (3) the court must find that immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *Giron v. Corrections Corp. of America*, 1997 U.S. Dist. LEXIS 18644, at *3 (D.N.M. 1997). "The party seeking certification for interlocutory appeal bears the heavy burden of showing that the order in question in exceptional." *Giron*, 1997 U.S. Dist. LEXIS 18644, at *3.

The Court is unpersuaded by Defendants' argument that any of the issues decided in the Order constitute a controlling issue of law on which there is substantial ground for difference of opinion. Defendants claim that there is substantial ground for difference of opinion as to whether

the Court should have applied the Rule 55(b) standard or the Rule 60(b) standard in ruling on their motion to vacate and whether the delay in this case was sufficiently long to justify a default judgment. The Court rejects each of these arguments in turn.

It is well-settled under the law of the Tenth Circuit that regardless of whether the Rule 55(b) standard or the Rule 60(b) standard applies in this situation, counsel's deliberate and counseled decision not to file an answer on behalf of either defendant is sufficient grounds for the Court's entry of default. *See, e.g., Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 576 (10th Cir. 1996). As the Tenth Circuit explained in *Cashner*,

> [i]f the mistake alleged is the party's litigation mistake, we have declined to grant relief under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled decision by the party. 'Generally speaking, a party who takes deliberate action with negative consequences . . . will not be relieved of the consequences [by Rule 60(b)(1)].

*Id.* (citation omitted); *see also Pelican Production Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990)("Carelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1)"); *White v. Cassey*, 1994 U.S. App. LEXIS 19571, at *7-8 (10th Cir. 1994)(neither gross carelessness nor ignorance of the rules or the law justify relief under Rule 60(b)(1); "[m]oreover, even where the blame lies with the attorney, the denial of 60(b) relief is not too harsh a result for a party, who freely selected the attorney as their agent"); *McMullen v. Washington National Insurance Co.*, 1994 U.S. App. LEXIS 4148, at *5-6 (10th Cir. 1994)(same).

The same is true for the Rule 55(b) standard. *Hunt v. Ford Motor Co.*, 1995 U.S. App. LEXIS 24463, at *9-11 (10th Cir. 1995)(under Rule 55(c), a "defendant's conduct is considered culpable if he has defaulted willfully or has no excuse for the default" "Defendant's failure to

answer or otherwise respond to the complaint after receiving actual notice of the complaint demonstrated a willful disregard for the court"); *Porter v. Brancato*, 171 F.R.D. 303 (D. Kan. 1997)(under Rule 55(c), failure to answer after receiving notice of the complaint constituted culpable conduct which provides a sufficient basis on its own to refuse to set aside a default).

Pursuant to this extensive, and well-settled case law, no matter whether Defendants had been granted a hearing, or which standard the Court had applied, the result would have been the same – entry of default judgment. While Defendants claim that the Court should have considered lesser sanctions, this multitude of cases fully supports the Court's decision to deny Defendants' Motion to Vacate and defeats Defendants' claim of any issue of law on which there is substantial ground for difference of opinion.

Nor are the cases cited by Defendants to the contrary. This is not a case involving good faith delay, *Stines v. Martin*, 849 F.2d 1323 (10th Cir. 1988), nor one where the parties failed to answer a second amended complaint served while discovery was ongoing and the delay was a result of inadvertence rather than a conscious decision by counsel. *Grandbouche v. Clancy*, 825 F.2d 1463, 1467-68 (10th Cir. 1987). Rather, counsel were aware of the complaint, having removed the case to federal court, and they made a conscious, deliberate decision not to file their answers on time. (Affidavit of Eleanor K. Bratton, ¶11.) The Federal Rules of Civil Procedure specifically address the appropriate action for a party who does not believe that it has not properly been served. FED. R. CIV. P. 12(b)(5). Counsel made the decision to ignore the rules, and neither they nor their clients will now be relieved of the consequences of their unfortunate choice.

### III. Motion to Vacate Default Judgment

On April 27, 1999, Defendants filed a Motion to Vacate and Set Aside Default, and then on May 6, 1999 filed a Motion to Vacate Default Judgment. The Court's Order of June 23, 1999 explicitly denied the former motion and, though it failed to reference the latter motion, the Motion to Vacate Default Judgment is denied on the same bases.

### CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Remand to State Court and Supporting Brief, filed May 17, 1999 **[Doc. No. 17]** and Defendants' Motion to Dismiss, or in the Alternative, to Remand, **[Doc. No. 56]** are hereby **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Amend Order **[Doc. No. 24]** is hereby **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Vacate Default Judgment, filed May 6, 1999 **[Doc. No. 15]** is hereby **denied**.

**DATED** this 18th day of February, 2000.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiffs:   Attorneys for Defendants:
Christopher Moody           Theresa Parrish
Whitney Warner              Robert St. John