IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TINA CLAWSON and PATRICIA NEIS,

     Plaintiffs,

vs.                                                                              No. CIV 99-379 MV/RLP

SOUTHWEST CARDIOLOGY ASSOCIATES, P.A.,
a corporation, and WILLIAM BENGE, M.D., an individual,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion to Reconsider Motion to Vacate and Set Aside Default, filed March 1, 2000 **[Doc. No. 78]**.  The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is well-taken in part and will be **granted in part and denied in part**.

## BACKGROUND

On March 23, 1999, Plaintiffs Tina Clawson and Partricia Neis filed their complaint in New Mexico state court, and served the summons and complaint on Defendants Southwest Cardiology Associates, P.A. ("SWCA") and William Benge, M.D.  Specifically, Dr. Benge was personally served two copies of the complaint, one indicating service on him individually and the other as agent for SWCA   The day after he was served, Dr. Benge gave one copy of the summons and complaint to SWCA's chief executive officer ("CEO"), who, in turn gave that copy to defense counsel.  The copy given to defense counsel was directed to Dr. Benge in his personal

1

capacity.  The SWCA CEO told Defense counsel that Dr. Benge was not an agent for service of process for SWCA, that the CEO was the corporation's registered agent and that the CEO had not been served.  Accordingly, defense counsel believed service had only been made on Dr. Benge as an individual and that SWCA had not yet been served.  In actuality, Dr. Benge was SWCA's registered agent and the March 23 service on Dr. Benge was good service on SWCA.

On April 2, 1999, counsel for Defendants entered appearances for the record, and removed the case to this Court.  On April 21, 1999, Plaintiffs sought and obtained Clerk's Entry of Default against Defendants for "failure to plead or otherwise defend" and moved for an Entry of Default Judgment.  Defendants received notice of Entry of Default on April 22, 1999, and received Plaintiffs' Motion for Default Judgment on April 26, 1999.  Defendants filed their answer and counterclaim on April 26, 1999.  On April 27, 1999, this Court issued a Default Judgment Order against Defendants who immediately filed a Motion to Vacate and Set Aside the Judgment of Default.  By Memorandum Opinion and Order filed June 23, 1999, this Court denied the motion to vacate.

Defendants then moved for an amendment to the Court's Order certifying the denial of the default for interlocutory appeal and again opposing the Court's entry of default judgment. In its Memorandum Opinion and Order filed February 18, 2000, the Court denied Defendants' motion, concluding that it had properly entered default for Defendants' failure to file an answer.

Defendants, represented by new counsel,  now urge the Court to reconsider its denial of Defendants' motion to vacate and set aside default.

**DISCUSSION**

**I. Authority for Reconsideration**

As a threshold issue, the Court must determine whether it can in fact reconsider its previous decision not to set aside the default against Defendant and, if so, what the source of its authority is. Defendants' motion for reconsideration does not cite to a specific rule justifying reconsideration. Plaintiffs argue that the two bases for reconsideration are Federal Rule of Civil Procedure 59(e) and Rule 60(b), that a Rule 59(e) order must be filed within ten days of the judgment, and that because that deadline was not met in this case, the Court must consider Defendants' motion under the Rule 60(b) standard. Defendants disagree, asserting that Rule 60(b) allows reconsideration of final judgments, but in this case they seek reconsideration of an interlocutory judgment. Accordingly, Defendants assert that as a non-final order, the Court's decision can be revised any time before the entry of a final judgment pursuant to Rule 54(b). Plaintiffs are incorrect that Rule 60(b) governs Defendants' motion. Rule 60(b) expressly applies to "final judgment[s]," but there is no final judgment here. A default judgment is not final until the amount of damages has been determined. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 97 (2nd Cir. 1993).

Rule 54(b), the rule upon which Defendants rely, governs judgments as to part of a case involving multiple claims or multiple parties. It permits a district court to make a judgment as to less than all claims or parties "final," and therefore immediately appealable. The Rule goes on to provide,

> In the absence of such determination and direction, any order or other form of decision however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to

-3-

any of the claims or parties, and *the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.*

FED. R. CIV. P. 54(b) (emphasis added).  Though this is not a case in which the Court has entered an order affecting only some of the multiple parties and claims, the Court does have authority to reconsider its June 23, 1999 Memorandum Order.  District courts have a general discretionary authority to reconsider a interlocutory decision.  *See Riggs v. Scrivner, Inc.*, 927 F.2d 1146, 1148 (10th Cir. 1991) (citing *Anderson v. Deere & Co.*, 852 F.2d 1244, 1246 (10th Cir. 1988)); *Greene v. Union Mutual Life Ins. Co. of America*, 764 F.2d 19, 22 (1st Cir. 1985) (quoting *Dow Chemical, USA v. Consumer Prod. Safety Comm'n*, 464 F.Supp. 904, 906 (W.D.La. 1979)); *United States v. Jerry*, 487 F.2d 600, 604 (3d Cir. 1973); *Shabazz v. Cole*, 69 F.Supp.2d 210, 226 (D.Mass 1999).  As the Supreme Court explained long ago, "if an interlocutory decree be involved, a rehearing may be sought at any time before the final decree, provided due diligence be employed and a revision be otherwise consonant with equity."  *John Simmons Co., v. Grier Bros. Co.*, 258 U.S. 82, 90-91 (1922).

## II. Standard to Apply in Reconsidering Motion

The parties also dispute whether Rule 55(c) or Rule 60(b) applies in this case.  Rule 55(c) provides, "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."  FED. R. CIV. P. 55(c).  According to the terms of the rule, the "good cause" standard applies to set aside *default* whereas Rule 60(b) allows a district court to grant relief from a default *judgment* if specific grounds are met.  The Court acknowledges that the confusion in this case is its own making in that it entered an order of default judgment before determining damages.  However,

-4-

this is not a final judgment, but should rather be treated as an order of default.  See *Enron Oil Corp.*, 10 F.3d at 97.  The Court will enter final judgment once it ascertains what relief it will grant.  *Id.*  Because there is no final judgment in this case, Rule 55(c) is the standard for the Court to apply in considering Defendants' motion.

In determining whether good cause exists to set aside default under Rule 55(c), courts consider "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused."  *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998) (citing cases).  The parties in this case focus on the first and third factors.

## III. Analysis

With these principles in mind, the Court turns to the grounds for reconsideration.  The crux of Defendants' motion is that the Court has never been provided a comprehensive account of the facts and misapprehended the facts in concluding that Defendants' failure to respond was culpable conduct.  Plaintiffs reply that Defendants have failed to offer any new facts or to argue any new points, that the Court did not misapprehend the facts, and that the default should stand.

### A. SWCA

As to Defendant SWCA, Defendants argue that the Court wrongly concluded that counsel must have known that SWCA had been served the summons and complaint because Dr. Benge was a registered agent for SWCA and had been served with two copies of the complaint – one marked for Dr. Benge in his "personal capacity" and one as agent for SWCA.  Defendants point out that the copy passed on to counsel was the one marked "personal capacity" and that therefore Defendants' counsel was under the mistaken but good faith belief that SWCA had not yet been

served.  This was the cause of SWCA's failure to file a responsive pleading in a timely fashion.
Moreover, Defendants assert, they worked to cure the default as soon as they were made aware
of it.  On this record, Defendants argue there is no basis to find that their failure to answer was
willful or deliberate justifying default.

The Court feels compelled to agree with Defendants' argument.  The Court was rightly
incredulous that Defendants' counsel could make so many mistakes, chief among them being
counsel's failure to determine who the agents for service of process for her client were and her
failure to discover that Dr. Benge had received two copies of the complaint, one marked for
SWCA.  That counsel could not have known that her client had been properly served, and that
counsel could fail to file a responsive pleading for SCWA after entering an appearance  and
removing the case to this Court is noteworthy.  This incredulity led to the Court's determination
that Defendant SWCA must have known it had been served.  Also affecting the Court's initial
decision not to set aside the default was counsel's inappropriate conduct in calling the Courtroom
Deputy repeatedly asking her to remove the default pleading from the Court's desk.  Despite
these errors and improprieties, the Court finds that default is too harsh a result for what was in the
end a fourteen-day delay in filing an answer in the case.  Defense counsel at the time submitted an
affidavit stating that she received the copy of the summons marked for Dr. Benge in his personal
capacity and honestly did not believe SWCA had been served.   Upon reconsideration the Court
finds that these were inadvertent errors not warranting default.

Review of the case law certainly supports this conclusion.  It is clear that there is a
"'judicial preference for adjudication on the merits.'"  *Johnson*, 140 F.3d at 784 (quoting
*Oberstar v. F.D.I.C.*, 987 F.2d 494, 504 (8th Cir. 1993)).  Moreover, as explained by one court

of appeals, "because defaults are generally disfavored and are reserved for rare occassions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party.  In other words, 'good cause' . . . should be construed generously." *Enron Oil Corp.*, 10 F.3d 96 (citing cases).  The Supreme Court has held, in applying the stricter standard of Rule 60(b), that "excusable neglect" encompasses "late filings cased by inadvertence, mistake or carelessness."  *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 388 (1993).  Courts of appeal, applying both Rule 60(b) and the less stringent standard of Rule 55(c), applicable here, have reversed default where delays were caused by mistakes rather than intentional acts.  *See, e.g., Johnson*, 140 F.3d at 783-85 (holding trial court abused its discretion in not setting aside default where defendant failed to answer because of poor communication between the defendant and his insurer, defendant cured its default within one day of learning of the mistake, and defendant's conduct was not intentional); *In re Jones Truck Lines, Inc.* 63 F.3d 685, 687-88 (8th Cir. 1995) (default reversed where though delay in filing answer was within the party's control, the reason for the delay did not constitute a willful flaunting of the deadline); *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845-46 (6th Cir. 1983) (holding trial court abused its discretion in not setting aside default where record did not support a finding that default was the result of willful conduct).

Several district court decisions have specifically found default was not appropriate where a party made a mistake regarding service or the deadline for a responsive pleading.  *See, e.g., Canfield v. VSH Restaurant Corp.*, 162 F.R.D. 431, 434 (N.D.N.Y. 1995) (default not willful where defendant did not realize papers constituted formal service); *Wayland v. District Court*, 104 F.R.D. 91 (D.Me. 1985) (default not proper where defendant did not know papers served by

certified mail constituted valid legal service of process); *Momah v. Albert Einstein Med. Ctr.*, 161 F.R.D. 304, 308 (E.D. Pa. 1995) (court found counsel's conduct in misunderstanding the rules about the time by which to file an answer was neglectful, but did not constitute willful behavior warranting default); *Freeze-Dry Prods., Inc. v. Metro Park Warehouse, Inc.*, 160 F.R.D. 156, 158-59 (D.Kan. 1995) (setting aside default where defendant's failure to respond was premised on a good faith belief that the motion to reconsider tolled the deadline for filing an answer).

Another factor supporting setting aside the default are Defendants' efforts to cure the default. *See 999 v. Cox & Co.*, 574 F.Supp. 1026, 1029 (E.D. Mo. 1983) ("[D]efendants' prompt action upon discovering that they were in default is further evidence that the default of defendants and the actions of their counsel was not willful"). Defendants' counsel stated that she worked to cure the default diligently as soon as she was made aware of it. She discovered that default had been entered on April 22, 1999, a Thursday, and worked all day Friday and over the weekend to file Defendants' answer and counterclaim on Monday, April 26 and their Motion to Vacate and Set Aside the Judgment of Default Tuesday, April 27.

The other element contested by the parties is prejudice to the Plaintiffs. The Court is mindful that it is setting aside default a year after declining to do so. The Court is somewhat reluctant to set aside the default as to SWCA because it knows that Plaintiffs have relied on the Court's entry of default in preparing for a damages hearing and assuming that the liability issues have been resolved. However, the initial prejudice to the Plaintiffs caused by Defendants' failure to timely answer was only fourteen days. Moreover, the Court feels it is in the interests of justice to correct its determination that SWCA was willful and set aside the default – the position strongly supported by the case law, rather than to let an improper default stand. Moreover, the

likelihood that the parties would move forward with the damages hearing now only to have the parties sent "back to the drawing board" were the default issue to be reversed on appeal militates in favor of setting aside default as to SWCA.

### B. Dr. Benge

As to Dr. Benge, Defendants argue that the Court misapprehended the facts in failing to consider that Dr. Benge's failure to answer was a result of counsel's calendaring error. Defendants' prior counsel did submit an affidavit stating that she mistakenly calendared Dr. Benge's response date as April 22[1] though the answer was in fact due on April 12. However, in addition to missing the correct answer date, Dr. Benge also missed the date calendared by his counsel, not filing an answer until April 26. Given this, the Court is at a loss as to how the calendaring error caused the late filed answer. Dr. Benge was clearly validly served on March 23 and Defendants have failed to show, as they did as to SWCA, that Dr. Benge's failure to answer was an inadvertent mistake. Because Defendants offer no other explanation for Dr. Benge's default and because it is not logical that calendaring a response date of April 22 resulted in Dr. Benge not filing an answer until April 26, the Court will not set aside the default as to Dr. Benge.

## IV. Sanctions

Plaintiffs urge this Court to grant them attorney fees and costs incurred in responding to this motion, arguing that Defendants have unreasonably multiplied this litigation warranting an award of fees and costs under 28 U.S.C. § 1927 or Rule 11. Plaintiffs argue that Defendants merely restate previous facts and arguments already ruled on by this Court. Defendants argue

---

[1]Though Ms. Bratton's affidavit indicates she calendared Dr. Benge's answer date for April 22, another pleading suggests that the answer date was calendared for April 23. Defs' Br. in Supp. of Mot. to Vacate and Set Aside Default, at 5.

that sanctions are not warranted in a case such as this where they are trying "to avoid an otherwise inevitable appellate issue and to forestall further default proceedings that would be mooted by a successful appeal." *Defendants' Reply*, at 2.

Given that the Court has granted Defendants' motion in part it does not find that sanctions are warranted in this case for unreasonably multiplying litigation.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Reconsider Motion to Vacate and Set Aside Default **[Doc. No. 78]** is hereby **granted in part and denied in part**. The Court hereby sets aside default and vacates the default judgment as to Defendant SWCA.

**DATED** this 21st day of June, 2000.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE

Attorneys for Plaintiffs:      Attorneys for Defendants:
Christopher Moody             Theresa Parrish
Whitney Warner                Robert St. John
                              Edward Ricco