IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TINA CLAWSON and PATRICIA NEIS,

    Plaintiffs,

vs.                                                                                                  No. CIV 99-379 MV/RLP

SOUTHWEST CARDIOLOGY ASSOCIATES, P.A.,
a corporation, and WILLIAM BENGE, M.D., an individual,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Benge's Motion to Dismiss Damages Claims, filed May 4, 2000 [Doc. No. 91], Defendant Southwest Cardiology's Motion to Dismiss Claim for Negligent Supervision and Retention, filed May 19, 2000 [Doc. No. 98], and Plaintiffs' Motion for Leave to Supplement Complaint as to Defendant Southwest Cardiology Associates, filed July 6, 2000 [Doc. No. 104]. The Court, having considered the motions, responses, replies, relevant law, and being otherwise fully informed, finds that the motions to dismiss are not well taken and will be denied and that the motion to supplement the complaint is well taken and will be granted.

## BACKGROUND

Plaintiffs Tina Clawson and Partricia Neis filed their complaint in New Mexico state court against Defendants Southwest Cardiology Associates, P.A. ("SWCA") and William Benge, M.D. Plaintiffs complain that while they were nurses at SWCA they were subjected to a sexually hostile

work environment in which SWCA physicians and management, including Benge, made sexual comments to and around Plaintiffs, touched employees inappropriately, and favored those employees who tolerated the pervasively sexual atmosphere. Plaintiffs made clear that they did not approve of the SWCA physicians' sexually charged behavior and complained to management about incompetent nurses and nurses who were given favorable treatment because they were amenable to the sexual atmosphere. SWCA terminated both Plaintiffs' employment, asserting that such terminations were "layoffs." Plaintiffs complain that in fact they were terminated in retaliation for complaining about the sexually hostile work environment and incompetent nursing, because Plaintiff Clawson contacted a governmental agency about the atmosphere, and because of Plaintiff Neis' serious medical condition. Plaintiffs bring counts against SWCA for retaliatory discharge, breach of contract, breach of the covenant of good faith and fair dealing, and negligent retention and supervision for not stopping Benge from creating a sexually hostile environment. Plaintiffs charge Benge with intentional interference with business relationship for his alleged interference with Plaintiffs' prospective business relationship with SWCA. The Complaint also includes an alternative charge against SWCA and Benge for prima facie tort.

      Plaintiffs filed this action in state court and served the summons and complaint on Defendants on March 23, 1999. On April 2, 1999, counsel for Defendants entered appearances for the record, and removed the case to this Court. On April 21, 1999, Plaintiffs sought and obtained Clerk's Entry of Default against Defendants for "failure to plead or otherwise defend" and moved for an Entry of Default Judgment. Defendants filed their answer and counterclaim on April 26, 1999. On April 27, 1999, this Court issued a Default Judgment Order against Defendants who immediately filed a Motion to Vacate and Set Aside the Judgment of Default.

This Court denied the motion to vacate, but later reconsidered its position and set aside default as to SWCA, finding that counsel had been under the mistaken but good faith belief that SWCA had not yet been served. However, the Court refused to set aside the default as to Benge because he failed to explain his failure to timely defend the action.

The claims against Benge and SWCA are therefore in different stages of litigation. The default as to Benge stands and all that is left as to the claim against him is to determine the appropriate amount of damages. Benge now attacks the sufficiency of the claim against him and seeks to have it dismissed. Now that default has been set aside as to SWCA, that portion of the case is essentially "back to square one." Currently before the Court is Plaintiffs' motion to supplement their complaint and SWCA's motion to dismiss the claim for negligent supervision and retention.

## DISCUSSION

### I. Benge's Motion to Dismiss

Plaintiffs complain that Benge intentionally interfered with their prospective business relationship with SWCA by inducing or otherwise causing SWCA to terminate Plaintiffs' employment. Complaint ¶¶ 84, 85. The Complaint alleges that Benge served on the SWCA Executive Committee which manages SWCA and made the decision to terminate Plaintiffs' employment. *Id.* ¶ 27. Further, the Complaint charges that Benge was acting within the scope of his employment at SWCA when he acted in bad faith by encouraging SWCA to terminate Plaintiffs. *Id.* ¶ 55. Benge asserts that these allegations are insufficient to state an intentional interference claim.

When a defendant defaults, he or she is deemed to admit the well-pleaded facts alleged in

-3-

the complaint. However, a defaulting defendant does not admit the conclusions of law in the complaint and therefore the court should assess the legal sufficiency of the claims. *See Bonilla v. Trebol Motors Corp.,* 150 F.3d 77, 80 (1st Cir. 1998); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988); 10 Moore's Federal Practice, § 55.12[1] (3d ed. 1999). In this case, Benge moves to dismiss the intentional interference with business relations claim against him. While acknowledging that because of the default judgment, the facts alleged are taken as true, Benge asserts that those facts are insufficient to state a claim against him. Specifically, Benge argues that because the complaint alleges that he was acting in the course and scope of his employment, he was acting as an agent of SWCA and cannot be deemed a third party who interfered with the contractual relationship between Plaintiffs and SWCA.

New Mexico courts have adopted the description of interference with prospective contractual relations outlined in the Restatement of Torts 2d, § 766B which provides,

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> > (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
> >
> > (b) preventing the other from acquiring or continuing the prospective relation.

*M & M Rental Tools, Inc. v. Milchem, Inc.*, 94 N.M. 449, 453 (Ct.App. 1980) (quoting Restatement of Torts 2d, § 766B)). The tort of intentional interference also requires an improper motive or an improper means. *Id.* at 454 (citing *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 582 P.2d 1365 (1978)).

Plaintiffs focus on this requirement of improper motive which they contend is established in this case. For his part, Benge focuses on Plaintiffs' allegation that he was an agent of SWCA who therefore cannot have interfered with the employment relationship between Plaintiffs and SWCA. Both issues must be addressed. The New Mexico courts have made clear that proof of an improper motive is needed to prove intentional interference, *see id.*; *Anderson v. Dairyland Ins. Co.*, 97 N.M. 155, 158 (1981), and here that element is established because the Complaint alleges that Benge "acted in bad faith by encouraging SWCA to terminate Plaintiffs for improper reasons." Complaint ¶ 55.

The New Mexico Supreme Court has never addressed the issue whether a supervisor may be charged with intentional interference with the business relations between an employee and employer. There is a New Mexico district court opinion upon which Benge relies, *Salazar v. Furr's, Inc.*, 629 F.Supp. 1403 (D.N.M. 1986), in which the plaintiff employee brought a claim for tortious interference with contractual relations against the president of her employer for allegedly interfering with the relationship between plaintiff and her employer. The court noted that a claim for tortiously interfering with a contract may only be brought against a third party and not against a party to the contract. Because the defendant president was an agent of the employer, the court held he could not be held liable for interfering with the relationship between plaintiff and the employer. *Id.* at 1410. Plaintiffs attack the validity of *Salazar*, noting that the court did not analyze whether the defendant president's conduct conformed with the elements of the tort under New Mexico law. Plaintiffs are correct that the *Salazar* court summarily decided that a supervisor acting as agent could not be held liable for intentional interference with a corporate contract without examining the elements of the tort.

Plaintiffs rely on a Tenth Circuit case which held that corporate employees can be found liable for toritous interference with a corporate contract, *Mason v. Oklahoma Turnpike Authority*, 115 F.3d 1442, 1453 (10th Cir. 1997). Though the *Mason* court was applying Oklahoma law, like New Mexico, the Oklahoma courts follow the Second Restatement's formulation of the tort of intentional interference with business relations. Reviewing the Restatement's discussion of the tort, the court noted that the primary inquiry is whether the actor's interference was justified or privileged or whether it was done in bad faith. *Id.* The court held that a corporate director's interference with a corporate contract is only privileged when the interference was done "in good faith and for a bona fide organizational purpose." *Id.* (citing cases). Thus, the court decided that for purposes of tortious interference, a corporate director is not deemed an agent of the corporation if he or she acted with an improper purpose. "When a corporate officer or director seeks the termination of a fellow employee for reasons that violate both public policy and the employee's constitutional rights, the officer or director does not act with an honest intent or for a bona fide organizational purpose, and the factors suggested by the Restatement weigh heavily in favor of finding that such interference is not justified." *Id.* at 1454.

Benge seeks to counter *Mason* in part by citing authority holding that a corporation can only act through its employees. While the Court does not disagree with this well established principle, under *Mason*, an employee is deemed not to be a corporation's agent when the employee interferes in bad faith with a corporate contract. Because Plaintiffs have established through default that Benge acted in bad faith in causing SWCA to terminate Plaintiffs, Plaintiffs have stated a valid claim of intentional interference with business relations against Benge. Accordingly, the Court will proceed with its damages hearing against Benge on this claim.

**II. SWCA's Motion to Dismiss**

SWCA moved the Court to dismiss the negligent supervision and retention claim while the motion to reconsider setting aside the default was still pending. Though default has been set aside as to SWCA, the Court finds that it is still proper to consider this motion. SWCA's motion is premised on the default entered against it, assuming that because of the default all well-pled allegations are accepted as true, but arguing that these facts fail to state a claim for negligent supervision and retention. This is the same standard the Court applies now that default has been set aside, proceeding under Federal Rule of Civil Procedure 12(b)(6).

In considering a Rule 12(b)(6) motion, the court must liberally construe the pleadings, accepting as true all well-pleaded facts, and drawing all reasonable inferences in favor of the plaintiff. *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir.1997). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that [he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

SWCA argues that Plaintiffs' claim for negligent supervision and retention fails because

Plaintiffs have not alleged sufficient misconduct by the underlying employee, Benge. Under New Mexico law, to state a claim for negligent supervision or retention, a plaintiff must show that the employer negligently failed to supervise or negligently retained an employee in a position of trust after "the employer knew or reasonably should have known that *some harm* might be caused by the acts or omissions of the employee who is entrusted with [the] position." *Los Ranchitos v. Tierra Grande, Inc.*, 116 N.M. 222, 228 (App. 1993) (citing *F & T Co. v. Woods*, 92 N.M. 697, 699 (1979)) (emphasis added). The New Mexico Supreme Court has never addressed whether the underlying harm which the employee caused the plaintiff must meet some threshold level to support a negligent supervision or retention claim. However, SWCA urges this Court to follow a Florida court which SWCA asserts held that the underlying harm must itself constitute a tort to sustain a negligent supervision or retention cause of action. *Texas Skaggs, Inc. v. Joannides*, 372 So.2d 985 (Fla. Dist. Ct. App. 1979). SWCA argues that New Mexico courts have implicitly accepted this position because the cases in which negligent supervision or retention claims have been maintained involve an employee who committed a tort against the plaintiff. Moreover, SWCA contends that this is the only reasonable approach because "[t]o allow a suit where the misconduct itself is not actionable would allow a plaintiff to use a negligent supervision or retention claim to bootstrap legally acceptable conduct into actionable behavior." *Memorandum Brief in Support of SWCA's Motion to Dismiss Claim of Damages for Negligent Supervision and Retention*, at 3. SWCA contends that Plaintiffs have failed to show the requisite level of harm because their claim for intentional interference with business relations is inadequate and Plaintiffs have not alleged another tort in their complaint. Further, SWCA asserts that sexual harassment cannot support a negligent retention or supervision claim and that, even if it could, Plaintiffs'

-8-

complaint does not state a claim for sexual harassment.

Plaintiffs disagree that they must allege a particular type of harm to maintain their claim for negligent retention or supervision. They note that New Mexico courts require only that some "general harm or consequence" must be foreseeable, *Valdez v. Warner*, 106 N.M. 306, 307 (Ct. App. 1987), and assert that this harm need not be intentionally tortious conduct. Plaintiffs point to cases holding that the underlying harm supporting a negligent retention or supervision claim may be supported by allegations of sexual harassment that are not plead in a Title VII sexual harassment claim. Moreover, Plaintiffs assert that their claims of intentional interference and prima facie tort against Benge sufficiently support the negligence claims against SWCA.

The Court finds SWCA's argument that plaintiffs alleging negligent supervision or retention must prove that the employee engaged in tortious conduct unavailing. There is no New Mexico case so holding. Rather, the case law merely requires some "harm." *Valdez*, 106 N.M. 306, 307. The one case, from another jurisdiction, upon which SWCA relies for the proposition that there must be a tort underlying a negligent supervision or retention claim does not go so far as SWCA would have the Court believe. The *Texas Skaggs* court held, "in order to impose liability on an employer for [negligent supervision or retention], a plaintiff must first show that he was injured by the *wrongful act* of an employee." *Texas Skaggs*, 372 So.2d at 987 (emphasis added). Moreover, there is persuasive authority from other jurisdictions holding that sexual harassment is a sufficient harm to maintain a claim for negligent supervision or retention. *See, e.g., Mandy v. Minnesota Mining and Mfg*, 940 F.Supp. 1463, 1471 (D. Minn 1996); *see also Coates v. Wal-Mart Stores*, 127 N.M. 47 (1999) (claim for negligent supervision given to jury when underlying harm was sexual harassment).

In this case, Plaintiffs complain that Benge made inappropriate sexual comments to and around Plaintiffs, including discussing sexual acts in graphic terms; engaged in offensive touching of SWCA employees; and favored employees who engaged in sexual relations with doctors or would tolerate the sexually hostile work environment. Complaint ¶¶12, 13. The Complaint alleges that SWCA knew of Benge's inappropriate conduct and that therefore SWCA knew Benge was unfit for his position. ¶ 66. Plaintiffs complain that they were being harassed because of their sex. ¶ 31. Plaintiffs allege that SWCA was negligent in retaining and supervising Benge in that it kept Benge in a position where he could harass, intimidate and harm Plaintiffs after it knew of his propensity to do so and that Plaintiffs were injured because of this negligence. ¶ 69, 73, 75. Plaintiffs also charge Benge directly with intentional interference with business relations and prima facie tort.

The Court finds that, accepting these allegations as true, Plaintiffs have stated a claim for negligent retention or supervision. Plaintiffs allege that SWCA knew of Benge's inappropriate sexual conduct, that his continued harassment of Plaintiffs was reasonably foreseeable, and that his conduct harmed Plaintiffs. This is all that is required to state a claim for negligent supervision or retention. *Los Ranchitos*, 116 N.M. at 228. Even if Plaintiffs were required to have suffered a legally cognizable harm, they have met that burden under the 12(b)(6) standard because they have alleged that they suffered from a sexually hostile work environment.

For sexual hostile work environment harassment to be actionable it must be "sufficiently severe or pervasive to 'alter the conditions of the victim's employment and create an abusive work environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986)). The plaintiff must prove that the work

environment was both objectively and subjectively hostile. *See Davis v. U.S. Postal Service*, 142 F.3d 1334, 1341 (10th Cir. 1998) (citing *Smith v. Norwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1413 (10th Cr. 1997)). Evidence of sexual harassment directed at a plaintiff's co-worker is relevant to the plaintiff's harassment claim because it is evidence that the plaintiff's work environment was permeated with harassment. *See Hirase-Doi v. U.S. West Communications, Inc.*, 61 F.3d 777, 782 (10th Cir. 1995) ("evidence of a general work atmosphere, including evidence of harassment of other women, may be considered in evaluating a [sexual harassment] claim") (citing *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415-16 (10th Cir. 1987)). To state a hostile work environment claim, the conduct alleged must be based on the complainants' sex or be driven by racial or gender-based animus. *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994). Plaintiffs' allegations satisfy this standard for actionable sexual harassment. Their Complaint alleges that they were subject to unwelcome comments of a sexual nature and harassment based on their sex that created a hostile work environment. Accordingly, Plaintiffs have stated a claim for negligent supervision or retention.

### III. Plaintiffs' Motion to Supplement Complaint

Federal Rule of Civil Procedure 15(d) provides that a court may allow a party to serve a supplemental pleading covering events that occurred since the date of the original pleading. FED. R. CIV. P. 15(a). The decision to grant leave to amend a complaint lies within the sound discretion of the trial court. *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 799 (10th Cir.1998).

Plaintiffs seek to supplement their Complaint to add statutory claims under Title VII, the Americans with Disabilities Act, and the New Mexico Human Rights Act. In support of their

-11-

motion to supplement, Plaintiffs note that these statutory claims may only be brought after the administrative remedies have been exhausted.  Plaintiffs received their right to sue notices from the Equal Employment Opportunity Commission and notices of non-determination from the Human Rights Division on their statutory claims on June 26, 2000, and now, having exhausted their administrative remedies, seek to add these statutory claims to their complaint.

     SWCA opposes the motion to supplement, arguing that Plaintiffs could have obtained their right to sue notice and non-determination notices sooner but that instead they let their claims linger.  SWCA is correct that a complainant may request that the notice of right to sue be issued any time after her or his complaint has been pending for at least 180 days.  29 C.F.R. § 1601.28(a)(1).  However, complainants are not required to do so.  Moreover, given the complicated procedural history in this case, it is understandable that Plaintiffs did not request their notices sooner.  Until this Court reconsidered its earlier decision and set aside default as to SWCA, Plaintiffs rightly believed that the only remaining issue in this case was the amount of damages on their claims.  Had default stood, it would not have been workable for Plaintiffs to add additional claims.  Default was set aside as to SWCA on June 21, 2000 and Plaintiffs quickly thereafter filed this motion to supplement their Complaint on July 6, 2000.  Against this backdrop, the Court finds unavailing SWCA's argument that Plaintiffs have allowed their statutory claims to linger and will grant Plaintiffs' motion to supplement.

     SWCA requests that if the Court grant Plaintiffs' motion to supplement, it reopen discovery to allow discovery into the new claims.  The Court will do so.  The Court will bifurcate the claims against SWCA from the one claim against Benge.  A new motions and trial schedule will be set as to the claims against SWCA and the Court will, in accordance with the parties

wishes to avoid duplicating their efforts, assess the damages against Benge at the same time it conducts the trial against SWCA.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Benge's Motion to Dismiss Damages Claims **[Doc. No. 91]** is hereby **denied**, Defendant Southwest Cardiology's Motion to Dismiss Claim for Negligent Supervision and Retention **[Doc. No. 98]** is hereby **denied**, and Plaintiffs' Motion for Leave to Supplement Complaint as to Defendant Southwest Cardiology Associates **[Doc. No. 104]** is hereby **granted**.

**DATED** this 7th day of September, 2000.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE


Attorneys for Plaintiffs:
Christopher Moody
Whitney Warner

Attorneys for Defendants:
Theresa Parrish
Robert St. John
Thomas Stahl